IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLEN TAYLOR,  AIS # 127254,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION 15-517-KD-C** |
| **JEFFERSON DUNN,** *et al.*, | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

Plaintiff Glen Taylor, an Alabama prison inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 2000cc-1 (Religious Land Use and Institutionalized Persons Act) ("RLUIPA"), together with a motion to proceed without prepayment of fees.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  After careful review, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

**I.  Section 1915(g)'s Three-Strikes Provision.**

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed. *Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir. 2002). "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'" *Rivera v. Allin*, 144 F.3d 719, 723 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199, 215-16 (2007).

Because Taylor is seeking leave to proceed *in forma pauperis*, the Court reviewed the records of the United States District Court for the Southern, Middle, and Northern Districts of Alabama to determine if he has three or more *in forma pauperis* actions and appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief can be granted. From those dockets the Court discovered that Taylor has had three *in forma pauperis* actions dismissed for one of the foregoing reasons, namely, *Taylor v. VanWyk*, CA No. 94-01631-ID-JLC (M.D. Ala. 1995); *Taylor v. Smithart*, CA No. 10-0105-ID-SRW (M.D. Ala. 2011); and *Taylor v. Pearson*, CA No. 14-101-KD-M (S.D. Ala. 2014). Thus, in order to avoid the dismissal of the present action pursuant to § 1915(g), Taylor must satisfy § 1915(g)'s exception, which requires that at the time of the complaint's filing, he show that he was "under imminent danger of serious physical injury." *See Adbul-Akabar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), *cert. denied*, 533 U.S. 953 (2001); *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present

imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler,* 185 F.3d 1189, 1193 (11th Cir. 1999) (the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

In determining if the exception to § 1915(g) is satisfied, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." *Brown*, 387 F.3d at 1350.  To make this showing, a plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]" *Ball v. Allen*, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (quotation omitted) (unpublished) (Granade, C.J.).  Plaintiff has not done this.

## II. Plaintiff's Complaint and Filings.

### A. The Complaint.  (Doc. 1).

In the complaint, Taylor alleges that he has taken vows to be an orthodox Catholic, Nazirite monk and has lived for years as such.  (Doc. 4).  His "hair, beard, earrings, etc[.] are [alleged to be] a historical part of [his] life time religious practice."  (*Id.*).  He maintains that in the past, and presently, the defendants deny him access to food unless he is clean-shaven.  (*Id.*).  He notes that the defendants have not ordered him to shave.  (*Id.*).  But on September 29, 2015, defendant "Warden Stewart ordered that no inmate would be allowed in the kitchen to eat without a clean shave and hair cut."  (*Id.* at 8).  Since that date, defendants refused him access to the kitchen and provided no alternate food sources to him, an indigent.  (*Id.*).  The Court received Taylor's complaint on October 9, 2015, in which he names as defendants Alabama Department of

Corrections ("ADOC") Commissioner Jefferson Dunn; Warden Cynthia Stewart; Sergeant Angelia Norman; and Officer T. Iler.

In the complaint Taylor describes incidents that occurred in the past beginning with defendant Stewart ordering, on November 18, 2014, that he be taken to segregation where he was handcuffed to a chair while another inmate shaved his hair and eye brows completely off. (*Id.* at 8-9).[1] This action, Taylor asserts, violates his "religious practice." (*Id.* at 9).

On August 10, 2015, defendant Norman took a food tray from Taylor when he was in the kitchen because he was not clean-shaven, which he contends was cruel and unusual punishment. (*Id.* at 6, 10).

On August 21, 2015, defendant Iler ordered him to cut his hair to be in compliance with ADOC rules that did not allowed hair longer than one inch. (*Id.* at 9). Taylor contends that this was an abuse of authority because the regulation at the time did not require this and it denied him his "religious practice." (*Id.*).

_____

[1]     Taylor complained of this same order in *Taylor v. Pearson*, CA No. 14-558-CB-C (S.D. Ala. Nov. 30, 2015), which was dismissed pursuant to 28 U.S.C. § 1915(g). In that action Taylor complained of twice being forced to have his hair cut, being told his ponytail must go, being told the staples in his ear holding his piercings open had to be taken out, and not being allowed to eat a few times because he was not clean-shaven, which were alleged to violate his equal protection rights, due process rights, Eighth Amendment rights, and First Amendment rights as a Nazirite. (Doc. 1).
        In *Taylor v. Pearson*, CA No. 14-558-CB-C, he refers to a prior action, *Taylor v. Pearson*, CA No. 14-101-KD-M (S.D. Ala. June 27, 2014), where he advises the "full scope of appearance issues: hair length, facial hair, ear rights, etc." was laid out. (Doc. 1 at 13). Civil Action Number 14-101-KD-M was dismissed as malicious for failure to list his prior cases. (Docs. 8, 10, 11). Contained in this action are allegations of denial of equal protection with respect to how females are allowed to wear their hair and earrings and to inmates with black surnames; of unsanitary barbering instruments; and of the denial of the exercise of his religious practices as a Nazirite since defendant Pearson came to Fountain two years ago by requiring he comply with an outdated hair policy and be clean-shaven every day. (Doc. 1).

4

More than a year prior to filing this action, defendant Stewart is alleged to have instituted a policy of "no shave, no haircut, no food." (*Id.*). This policy was employed occasionally, but on September 29, 2015, defendant Stewart made it mandatory, thereby depriving him access to the kitchen to eat. (*Id.*). Taylor contends that this is cruel and unusual punishment. (*Id.*).

In August, 2015, after the Supreme Court ruling in January, 2015, defendant Stewart allowed fourteen inmates, whom Taylor did not describe or identify, to wear a one-half inch beard, the reasoning therefor Taylor did not provide. (*Id* at 10). Taylor claims this violates his equal protection rights. (*Id.*).

Taylor complains that defendant Dunn, as Commissioner, failed to create rules pursuant to RLUIPA, which leaves him subject to "the every day brutality of the prison guards and Defendant Warden Stewart." (*Id.* at 8). Taylor asserts that it is not for defendant "Stewart to determine what rites a religious community can follow" because doing so violates RLUIPA and the separation of church and state. (*Id.* at 10).

For relief, Taylor seeks an order allowing the wearing of a one-half inch beard in the ADOC prison system by religious communities other than Muslims and Jews; a holding "the length of [his] hair is not an undue burden concerning religious practice"; a holding "ADOC does not determine [a] religious rite, but only whether such [a] rite is an undue burden upon the ADOC"; and a holding "ADOC may not withhold food or medical care for disciplinary reasons of any type," and damages of $1,000 for each day he was not allowed to eat. (*Id.* at 11).

**B.  Other Filings.**

Along with his complaint, Taylor filed a motion for temporary restraining order/preliminary injunction (Doc. 3), in which he adds the following

information.  While at Fountain Correctional Facility, over the past five years, he has worn his hair and beard at a moderate length, which is his religious custom. (*Id.* at 1).  He sought a middle ground with defendants to no avail.  (*Id.*).  As of September 29, 2015, unless inmates' haircuts are off the collar and ears, no food service will be provided except for the exempted fourteen inmates.  (*Id.* at 2). "Taylor refuses to shave except to comply with the Supreme Court's order that for [a] religious rite an inmate may wear a ½" beard."  (*Id.*).  Since September 29, 2015, when defendants last allowed him to eat, he has gotten by with "the meager handout of other inmates" as he has no money to purchase food.  (*Id.*). For relief, he wants an order that defendants have to feed him like other inmates, that "they shall not require that he shave other than to maintain ½ inch beard," and "[d]efendants are not to cut [his] hair until a determination [by] this Court has been reached[.]"  (*Id.* at 3).

In an affidavit signed under penalty of perjury, he adds that over three years, he filed three requests for religious assistance and never received a response.  (Doc. 4 at 1).  He has "refused to shave, with the exception to comply with the United States Supreme Court's ruling, that [he] can grow a one (1) half inch beard."  (*Id.* at 2).  Since defendant Stewart's September 29, 2015 order, he has not been allowed to eat in the prison kitchen.  (*Id.*).  He is a chronic care patient and "yesterday on October 6th, [he] was allowed to see the doctor [who] informed [him] that [he had] lost 18 lbs since [his] last visit."  (*Id.*).

Subsequent to these filings, Taylor filed a motion for an oral hearing on his motion for a temporary restraining order.  He contends that "[a]fter the Court notified the Defendants of this action being filed with the Court, the Defendant

gave Plaintiff a brief reprieve."[2]  (Doc. 5 at 1).  However, the practice resumed on November 10, 2015, when Sgt. J. Auston denied him access to the kitchen because he did not have documentation authorizing the wearing of a beard for religious purposes.  (*Id.* at 2).  Taylor had made an application for said documentation in September, 2015, but he has not received answer.  (*Id.*).  It is well known that defendant Stewart has not granted beard requests to Christians, only to Muslims and Jews.  (*Id.*).  He believes the harassment will continue.  (*Id.* at 3).

Later, Taylor filed motion for consideration because on November 21, 2015, defendant Iler began writing him disciplinaries each day when he is on duty.  (*Id.* at 2).  No one, however, has told Taylor to shave.  (*Id.* at 3).  Then, he filed a status report indicating that as of February 26, 2016, defendants still refuse to accept his right to wear a beard as authorized by *Holt v. Hobbs*, [ ___ U.S. ___, 135 S.Ct. 853, 190 L.Ed.2d 747] (2015),[3] and they refuse to comply with ADOC's haircut policy.[4]  (*Id.* at 1).  He advises that he continues to receive disciplinaries

---

[2]      The Court observes that defendants have not been served in this action as this action is presently undergoing the screening process under 28 U.S.C. § 1915, which is necessary before defendants can be served.

[3]      The Court in *Holt* found in a RLUIPA action that the Arkansas Department of Corrections did substantially burden a devout Muslim inmate's religious exercise when it prohibited him from wearing a one-half inch beard *and* that the Arkansas Department of Corrections failed to meet its burden of showing that its policy was the least restrictive means of furthering its compelling governmental interest.  *Holt*, 135 S.Ct. at 859.  Taylor reduces the *Holt* decision to a simple holding that favors his position – *Holt* authorizes the wearing of a one-half inch beard for religious reasons.  But a reading of the entire opinion and concurrences shows Taylor's reading of *Holt* is an oversimplification. *See Knight v. Thompson*, 797 F.3d 934, 937 (11th Cir. Aug. 5, 2015), *cert. denied*, 136 S.Ct. 1824 (U.S. May 2, 2016), *infra*.

[4]      The Alabama Department of Corrections' haircut policy "requires all male prison inmates to wear a 'regular hair cut,' defined as 'off neck and ears.'" *Knight v. Thompson*, 797 F.3d 934, 937 (11th Cir. Aug. 5, 2015), *cert. denied,* 136 S.Ct.

and that on December 30, 2015, he was taken from the kitchen by defendant Iler to segregation "where [he] was ordered shaved and ordered to maintain a proper haircut or face further disciplinary action for failure to obey a direct order."  (*Id.* at 2-3*).*

## III. Analysis.

In considering Taylor's allegations that are germane to a showing that he was in imminent danger of serious physical injury at the time of the complaint's filing, the Court focuses on those allegations concerning his situation at the time of the complaint's filing on or about October 7, 2015.  *See Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988) (delivery of prisoner's notice of appeal to prison officials for mailing to the court constitutes filing).[5]  His other

---

1824 (U.S. May 2, 2016).  This policy was affirmed in the RLUIPA case of *Knight v. Thompson*.  (*Id.*).  In ruling on the Native American inmates' challenge to ADOC's no-exclusion haircut policy so they could wear their hair unshorn, the Eleventh Circuit noted that unshorn hair was also a requirement of a Nazirite.  *Id.* at 944 n.6, 947.  The parties and the Court recognized that ADOC's hair-length policy provided for no exclusions, religious or otherwise, and therefor substantially burdened the plaintiffs' religious exercise.  *Id.* at 944.  *But* "[b]ecause the ADOC carried its RLUIPA burden to demonstrate that its hair-length policy is the least restrictive means of furthering its compelling governmental interests, [the Eleventh Circuit] affirm[ed]" ADOC's hair-length policy.  *Id.* at 937.

In view of the recent *Knight* decision, where the Native American inmates were represented by counsel, and the hair-length policy was thoroughly litigated, Taylor's advocating that the system-wide ADOC hair-length policy violates his exercise of his religion is a difficult argument to make.  In fact, if there was a ruling on the merits of his claim, a court may find it to be frivolous.  *See Clark v. Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 640 (11th Cir. 1990)("If an identical claim had recently been litigated unsuccessfully by others, perhaps a section 1915(d) dismissal could be utilized.").

[5]      The envelope containing the complaint reflects a postmark of October 7, 2015 (Doc. 3 at 4), and Taylor signed the complaint on October 7, 2015.  (Doc. 1 at 7).  *Cf. Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (finding the day the inmate signed his complaint would be presumed to the day he delivered it prison officials in the absence of evidence to the contrary).

allegations, however, are not ignored, as they make clearer those allegations occurring at the time of filing and aid in the consideration of the entire complaint.

In analyzing the complaint's allegations that are closest to the date of filing, the Court notes that defendant Stewart ordered on September 29, 2015 that the policy of "no shave, no haircut, no service" was now mandatory. (Doc. 1 at 9). Plaintiff represents that since then he was denied "access to the kitchen to eat for every meal, with no alternate source of food being provided for [him] who is indigent." (*Id.* at 8). In the complaint, these are the extent of his allegations that can be considered as relevant to a showing that he was in imminent danger of serious physical injury at the time of filing. Moreover, these acts are apparently the reason that prompted him to file this action.

At the same time Taylor filed the complaint, he filed a motion for temporary restraining order/preliminary injunction, in which he states that he is getting by with meager food handouts from other inmates, as he does not have money to purchase food. (Doc. 3 at 2). And in the affidavit that he filed at the same time, he advises that he is a chronic care patient, without disclosing his condition, and that at his medical visit on October 6, 2015, he had lost eighteen pounds since his last visit, without disclosing the date of his last visit. (Doc. 4 at 2).

These allegations are broad and lacking in detail to show that a serious physical injury would imminently occur. Moreover, Taylor contradicted his complaint's allegation representing that he has had no food since September 29, 2015, when he stated he receives handouts from other inmates. *See Battle v. Central State Hosp.*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) (ruling that frivolous allegations may include those "allegations that are contradicted by other

allegations in the complaint"). Thus, the Court concludes that Taylor has not carried his burden of showing that at the complaint's filing he was in imminent danger of serious physical injury. Moreover, Taylor was aware of his burden to show that he was in imminent danger of serious physical injury at the time of the complaint's filing as *Taylor v. Pearson*, CA No. 14-558-CB-C, *supra*, was dismissed pursuant to § 1915(g). In that action, the Court advised him of § 1915(g)'s requirements (Doc. 4), and in response to his post-judgment letter about how to proceed, the undersigned advised him to file a separate action with the filing fee or with an IFP request that complies with § 1915(g). (Doc. 8).

## IV. Conclusion.

Because Taylor cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400 filing fee at the time he filed this action, this action is due to be dismissed without prejudice. *Dupree*, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to § 1915(g) does not "pay the filing fee at the time he *initiates* the suit"); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert. denied*, 535 U.S. 976 (2002). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).[6]

---

[6]    An alternate basis for dismissal exists because Taylor did not list all of his prior cases in his complaint when the complaint form required that he do so (Doc. 1), and after the Court brought this to his attention, he still did not list all of his prior cases. (Docs. 6-9). When an inmate fails to list his prior cases on a court-provided form that requires he does so, the complaint is subject to dismissal as malicious under 28 U.S.C. § 1915(e)(2)(B)(i). *Pinson v. Grimes*, 391 F. App'x 797 (11th Cir.) (unpublished), *cert. denied*, 562 U.S. 1013 (2010); *see* 11TH CIR. R. 36-2

## NOTICE OF RIGHT TO FILE OBJECTIONS

---

(2005) ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.")

   In this particular instance, this Court's complaint form required that Taylor indicate whether he had filed other lawsuits in state or federal court relating to the same or similar facts of the present action or to his imprisonment. (Doc. 1 at 3). He responded "yes" to both questions and listed only one action, *Taylor v. Pearson*, CA No. 14-101-KD-M (S.D. Ala. 2014), which he specified was dismissed pursuant to § 1915(e)(2)(B)(i). (*Id.*). When the screening of this action initially began, the Court informed him that he did not list all of his prior actions when it was required, and that as a result, his action appears to have been maliciously filed and was therefore due to be dismissed. (Doc. 6). The next filing received from Taylor, motion for consideration, did not respond to this order. (Doc. 7).

   Thereupon, another order was entered denying his motion and requiring him to address preliminary issues – should he be allowed to proceed IFP, is his complaint malicious, or has he paid or is he attempting to pay the filing fee if he is ineligible to proceed IFP. (Doc. 8). Taylor responded by filing a listing of prior cases that he requested to be attached to his complaint. (Doc. 9). Contained in this listing are the following federal cases with some of his notations: *Taylor v. Pearson*, CA No. 14-558-CB-C (S.D. Ala. 2015) (ifp rescinded [because it was a § 1915(g) dismissal]); *Taylor v. Pearson*, CA No. 14-101-KD-M (S.D. Ala. 2014) (dismissed pursuant to § 1915(e)(2)(B)[as malicious]); *Taylor v. Dillard*, CA No. 12-cv-00037-TMH-SRW (M.D. Ala. 2012); *Taylor v. Gandy*, CA No. 11-27-KD-B (S.D. Ala. 2012); *Taylor v. Smithart*, CA No. 10-cv-01057-ID-SRW (M.D. Ala. 2011) (dismissed prior to service of process [pursuant to § 1915(e)(2)(B)(i-ii)]); *Taylor v. O'Connor*, CA No. 95-00055-WHA-JLC (M.D. Ala. 1996); *Taylor v. VanWyk*, CA No. 94-cv-01631-ID-JLC (M.D. Ala. 1995) (dismissed prior to service of process [pursuant to 1915(d)]).

   This listing, however, falls short of including all his prior cases according to PACER (Public Access to Court Electronic Records). Not included in this list are: *Taylor v. Langham*, CA No. 12-795-CB-M (S.D. Ala. 2013) (summary judgment granted for defendants), and *Taylor v. Morton*, CA No. 2:07-cv-01860-WMA-TMP (N.D. Ala. 2007) (voluntary motion to dismiss).

   By listing only one action in the present complaint and not offering any explanation for doing so when he was aware of his prior actions and of being subject to § 1915(g)'s bar, *see Taylor v. Pearson*, CA No. 14-558-CB-C (S.D. Ala. 2015), the Court can only conclude this action is malicious. Clearly, Taylor attempted to circumvent the screening process by not providing information that he had, or should have had, which would have straightaway informed the Court of the posture of his action, albeit unfavorable for him, and save the Court the expenditure of time and resources that could have been devoted to other cases on its docket, which includes other prisoner cases. Accordingly, Taylor's action is due to be dismissed on the alternate ground, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), that it is malicious, as it contain no claims that cannot be re-filed prior to the expiration of the two-year statute of limitations. *See Hines v. Thomas*, 604 F. App'x 796, 800 (11th Cir. 2015) (unpublished).

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. Gen.LR 72(c).  The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings."  *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific

**DONE** this 24th day of June, 2015.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE